DEC 2 1

## No. 12-8115

# In the United States Court of Appeals for the Third Circuit

IN RE: CHOCOLATE CONFECTIONARY ANTITRUST LITIGATION

(THIS DOCUMENT APPLIES TO DIRECT PURCHASER CLASS PLAINTIFFS)

On Petition for Leave to Appeal from the United States District Court
for the Middle District of Pennsylvania (Conner, J.)
MDL No. 1935 (Civil Action No. 1:08-MDL-1935)

## PETITION PURSUANT TO FED. R. CIV. P. 23(F) FOR LEAVE TO APPEAL A CLASS CERTIFICATION DECISION

Alan R. Boynton Jr.
MCNEES WALLACE & NURICK LLC
100 Pine Street, PO Box 1166
Harrisburg, PA   17108
(717) 232-8000

Thomas D. Yannucci, P.C.
Christopher Landau, P.C.
Craig S. Primis, P.C.
Jennifer W. Cowen
Erin C. Johnston
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC   20005
(202) 879-5000

*Counsel for Defendants The Hershey Company and Hershey Canada Inc.*
*Additional Counsel on Signature Block*

December 21, 2012

## CORPORATE DISCLOSURE STATEMENT

Defendant-petitioner The Hershey Company, a publicly held Delaware corporation, has no parent corporation, and no publicly held corporation owns 10% or more of its stock. Defendant-petitioner Hershey Canada Inc. is a wholly owned subsidiary of The Hershey Company, and no other publicly held corporation owns 10% or more of its stock.

Defendant-petitioner Mars, Incorporated, a privately held corporation, has no parent corporation, and is itself the parent corporation of Defendant-petitioner Mars Snackfood US, LLC. No publicly held corporation owns 10% or more of the stock of either Mars, Incorporated or Mars Snackfood US, LLC.

Defendant-petitioner Nestle USA, Inc. is a wholly owned subsidiary of Nestle Holdings, Inc., which in turn is a wholly owned subsidiary of Nestle S.A. No other publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................... 1

QUESTIONS PRESENTED ........................................................................... 3

BACKGROUND ............................................................................................ 3

ARGUMENT ................................................................................................. 5

I.     The District Court Erred By Creating A Presumption Of Antitrust Impact Where Defendants Allegedly Conspired To Raise List Prices, Regardless Of Whether Plaintiffs Actually Paid List Prices. ......................... 5

II.    The District Court Erred By Holding That Class Certification Is Warranted Where, As Here, The Putative Class Concededly Includes Plaintiffs Who Have Not Been Injured And Thus Have No Claim.............. 14

CONCLUSION ............................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atl. Corp. v. AT&T Corp.*,
339 F.3d 294 (5th Cir. 2003)................................................................ 16, 17

*Bogosian v. Gulf Oil Corp.*,
561 F.2d 434 (3d Cir. 1977)..................................................................... 6, 16

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993) ..................................................................................... 7

*Gates v. Rohm & Haas Co.*,
655 F.3d 255 (3d Cir. 2011)......................................................................... 18

*In re Baby Food Antitrust Litig.*,
166 F.3d 112 (3d Cir. 1999)........................................................................... 7

*In re EPDM Antitrust Litig.*,
256 F.R.D. 82 (D. Conn. 2009)..................................................................... 14

*In re Flonase Antitrust Litig.*,
284 F.R.D. 207 (E.D. Pa. 2012) .............................................................. 16, 20

*In re High Fructose Corn Syrup Antitrust Litig.*,
295 F.3d 651 (7th Cir. 2002)................................................................... 12, 13

*In re Hydrogen Peroxide Antitrust Litig.*,
552 F.3d 305 (3d Cir. 2009)......1, 2, 4, 6, 9, 10, 11, 14, 15, 16, 17, 18, 19, 20

*In re LifeUSA Holding Inc.*,
242 F.3d 136 (3d Cir. 2001)......................................................................... 12

*In re Linerboard Antitrust Litig.*,
203 F.R.D. 197 (E.D. Pa. 2001),
*aff'd*, 305 F.3d 145 (3d Cir. 2002) ............................................................... 8

*In re Neurontin Antitrust Litig.*,
No. 02-1390, 2011 WL 286118 (D.N.J. Jan. 25, 2011)......................... 16, 20

ii

*In re OSB Antitrust Litig.,*
   No. 06-826, 2007 WL 2253418 (E.D. Pa. Aug. 3, 2007) ............................. 19

*In re Plastics Additives Antitrust Litig.,*
   No. 03-CV-2038, 2010 WL 3431837 (E.D. Pa. Aug. 31, 2010) .................. 14

*In re Urethane Antitrust Litig.,*
   237 F.R.D. 440 (D. Kan. 2006)..................................................................... 13

*Kohen v. Pacific Inv. Mgmt. Co.,*
   571 F.3d 672 (7th Cir. 2009)........................................................................ 20

*Marcus v. BMW of N. Am., LLC,*
   687 F.3d 583 (3d Cir. 2012)......................................................................... 15

*McDonough v. Toys R' Us, Inc.,*
   638 F. Supp. 2d 461 (E.D. Pa. 2009) ........................................................... 13

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
   259 F.3d 154 (3d Cir. 2001)......................................................5, 6, 12, 18, 19

*Wal-Mart Stores, Inc. v. Dukes,*
   131 S. Ct. 2541 (2011) .......................................................................... 11, 12

**Statutes and Rules**

15 U.S.C. § 1 ...........................................................................................................3

Fed R. Civ. P. 23 ...............................................3, 9, 10, 11, 14, 15, 17, 18

Fed. R. Civ. P. 23(a).............................................................................................. 15

Fed. R. Civ. P. 23(b)(3) ................................................................................... 15, 17

Fed. R. Civ. P. 23(f) ................................................................................................5

## INTRODUCTION

This petition provides a vehicle for this Court to resolve important and recurring issues relating to class certification in antitrust cases. As this Court has recognized, an antitrust plaintiff seeking such certification must show that the element of individual injury (also known as antitrust impact) "is capable of proof at trial through evidence that is common to the class rather than individual to its members." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311-12 (3d Cir. 2009). The district court here concluded that plaintiffs had made such a showing. This petition challenges that conclusion on two grounds.

*First*, the district court erred by creating a presumption of antitrust impact where defendants allegedly conspired to raise *list* prices, regardless of whether plaintiffs actually paid such prices. It is undisputed that many putative class members here did not pay list prices on their purchases of chocolate candy products from defendants. To the contrary, putative class members—who are primarily retail merchants of greatly varying sizes—individually negotiated price discounts of greatly varying amounts. Whether those discounts exceeded the price that would have been charged but for the alleged conspiracy—thus preventing antitrust injury—is a plaintiff-specific issue not susceptible to classwide proof. The district court, however, sidestepped this issue by declaring that an alleged conspiracy to raise *list* prices necessarily injures all customers, regardless of the

discount ultimately negotiated, by "raising the *starting point* for price negotiations, ultimately inflating the prices paid." Class Cert. Op. (attached as Tab A) 44-45 (emphasis added). It is hard to overstate the impact of that ruling, which effectively eliminates plaintiffs' burden of showing classwide antitrust injury.

*Second*, the district court erred by holding that class certification is warranted even where, as here, the class *concededly* includes plaintiffs who have not been injured and thus have no claim. Plaintiffs' own expert acknowledged that his analysis did not establish that *every* member of the class had actually suffered antitrust impact. The district court, however, brushed aside this point on the ground that plaintiffs "state that [their expert's] models will be further refined, and, to the extent necessary, unaffected customers may be removed at the claims phase of the litigation." Class Cert. Op. 46 n.30; *see generally id.* at 44 (describing plaintiffs' evidence that "*nearly*" all class members paid higher prices as a result of the alleged list-price conspiracy) (emphasis added). Again, it is hard to overstate the impact of that ruling. The whole theory of a class action, after all, is that the named plaintiffs represent, and thus may lawfully bind, "*every* class member." *Hydrogen Peroxide*, 552 F.3d at 311 (emphasis added). If an absent class member concededly has no claim, then the class *by definition* is flawed. Nor may a court certify a class based on the possibility that an expert may "refine" a model at some later date, or that uninjured plaintiffs may be carved out at the damages phase.

2

"Certify first, fix the class later," is not the standard governing certification, and is no substitute for the "rigorous analysis" that both Rule 23 and due process demand.

At the end of the day, regardless of whether petitioners are right or wrong, the important questions presented here warrant appellate review, and this Court, which has played a leading role in defining the requisites for establishing class certification in antitrust cases, is uniquely qualified to provide guidance. Accordingly, the Court should grant this petition.

## QUESTIONS PRESENTED

1.    Whether the district court erred by creating a presumption of antitrust impact where defendants allegedly conspired to raise list prices, regardless of whether plaintiffs actually paid list prices.

2.    Whether the district court erred by holding that class certification is warranted even where, as here, the class concededly includes plaintiffs who have not been injured and thus have no claim.

## BACKGROUND

Plaintiffs, direct purchasers of chocolate candy products, allege in this consolidated MDL proceeding that defendants conspired to fix prices in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. As initially filed, the complaints alleged that the conspiracy involved single-serving bars, bagged candy, and seasonal candy products. The allegations are based on three series of parallel

3

increases in list prices that occurred in 2002, 2004, and 2007. *See* Class Cert. Op. 24-27. The essential elements of these claims are: (1) a conspiracy in violation of the antitrust laws; (2) individual injury as a result of the violation; and (3) measurable damages. *Id.* at 40 (citing *Hydrogen Peroxide*, 552 F.3d at 311).

After plaintiffs dropped their claims involving bagged and seasonal chocolate candy (which account for about two-thirds of their purchases), they moved to certify a class of all persons who purchased single-serving chocolate candy products for resale directly from defendants between 2002 and 2007. *Id.* at 5. Defendants opposed class certification in large part on the ground that plaintiffs failed to establish they could prove antitrust impact on a classwide basis in light of the individually negotiated and varied "trade spend" discounts. *Id.* at 30-31; Nov. 16, 2011 Hr'g Tr. (relevant excerpts attached as Tab B) 4-28. Plaintiffs' expert analysis on individual injury did not even attempt to account for the vast majority of these discounts. Nov. 16, 2011 Hr'g Tr. 4-5. Without addressing the discounts, plaintiffs' expert acknowledged that, under his model, 68 putative class members were not impacted by the alleged list-price conspiracy—a figure that ballooned to over 700 (about a quarter of the putative class) when defendants' expert applied that same model. Class Cert Op. 46 n.30; Nov. 16, 2012 Hr'g Tr. 114-15.

The district court conducted a hearing in November 2011 and granted plaintiffs' class certification motion in a written opinion entered on December 7,

4

2012. *See* Class Cert. Op. The court held that plaintiffs could establish individual injury through common evidence because the alleged list-price conspiracy "rais[ed] the starting point for price negotiations, ultimately inflating the prices paid." *Id.* at 44-45. With respect to the putative class members who did not suffer any injury, the court accepted plaintiffs' suggestion that their expert's "models will be further refined, and, to the extent necessary, unaffected customers may be removed at the claims phase of the litigation." *Id.* at 46 n.30. Accordingly, the court certified the plaintiffs' proposed class. *See* Order 1. This petition follows.

## ARGUMENT

This Court has "wide latitude" to grant interlocutory review under Rule 23(f), and may base its decision on "any consideration that [it] finds persuasive." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 165 (3d Cir. 2001). As explained below, such review is warranted in this case "to address … an erroneous ruling" and "[to] facilitate development of the law on class certification." *Id.*

**I.   The District Court Erred By Creating A Presumption Of Antitrust Impact Where Defendants Allegedly Conspired To Raise List Prices, Regardless Of Whether Plaintiffs Actually Paid List Prices.**

It is well settled that establishing individual injury, or "antitrust impact," in a private antitrust action requires more than simply showing that list prices increased as the result of an alleged conspiracy. Rather, plaintiffs must show that their actual

5

transaction prices exceeded the prices they would have paid absent, or "but for," the alleged conspiracy. *See, e.g., Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 455 (3d Cir. 1977) (requiring plaintiffs to prove that "free market prices would be lower than the prices paid"); *cf. Newton*, 259 F.3d at 188-89 ("[O]nly those class members whose trades could have been executed at better prices sustained economic injury here").    Moreover, in the class-certification context, plaintiffs must demonstrate that antitrust impact "is capable of proof at trial through evidence that is common to the class rather than individual to its members." *Hydrogen Peroxide*, 552 F.3d at 311-12.  Plaintiffs bear the burden of making this showing by a preponderance of the evidence. *See id.* at 307.

This Court has explained that the impact analysis is "critically important" to the class-certification inquiry because proper evaluation "may call for individual, as opposed to common, proof." *Id.* at 311.  That is true here.  Although wholesale *list* prices for single-serving chocolate candy products are uniform, it is undisputed that the chocolate candy business is subject to widespread discounting through individually negotiated "trade spend" programs that vary widely among customers. *See* Class Cert. Op. 30-31.[1]  These trade spend discounts, not list prices, determine

---

[1] The chocolate candy business is not unique in this respect.  Substantial price discounting through trade spend programs is common across consumer packaged goods industries. *See* Nov. 15, 2012 Hr'g Tr. 217-18 (relevant excerpts attached as Tab C).  Indeed, the Supreme Court has recognized that, in an oligopoly setting,
(Continued...)

6

the actual prices each customer pays. Nov. 16, 2012 Hr'g Tr. 70-73. And the trade spend discounts on chocolate candy are substantial, amounting to billions of dollars in the class period alone. *See* Nov. 16, 2012 Hr'g Tr. 37-38. Once trade spend discounts are taken into account, there can be no dispute that the putative class members here actually paid different transaction prices. *See* Class Cert. Op. 46 (acknowledging that "many class members paid different net prices for these products); *id.* at 36 (noting that "class members ultimately paid a different price for certain products"); *id.* at 31 (noting that plaintiffs acknowledge they "may have paid different transaction prices"). Determining whether any particular customer suffered antitrust impact therefore requires an individual inquiry into what that customer actually paid and whether those prices exceeded the prices that the customer would have paid but for the alleged conspiracy.

Plaintiffs' impact and damages expert, Dr. James T. McClave, did not even attempt to account for the vast majority of trade spend discounts in the prices he used for his impact analysis. Nov. 16, 2012 Hr'g Tr. 4-5. Instead, Dr. McClave used Hershey and Mars *invoice* prices for his price impact analysis, even though invoice prices do not reflect the bulk of the trade spend discounts and are

---

"price competition is most likely to take place through less observable and less regulable means than list prices." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 236 (1993); *see also In re Baby Food Antitrust Litig.*, 166 F.3d 112, 128-29 (3d Cir. 1999).

essentially equivalent to list prices. *Id.* at 29-37. He ignored all Nestle USA trade spend regardless of whether it appeared on the invoice. *Id.* Moreover, as Dr. McClave acknowledged, his impact analysis did not include any proposed "but for" prices. *See, e.g.,* November 14, 2011 Hr'g Tr. (relevant excerpts attached as Tab D) 234-35 ("Q: Your impact analysis has no but for world, right? A: Correct."). While Dr. McClave estimated a "but for" price as part of his separate econometric damages analysis, there is "no place in Dr. McClave's analysis where he takes the but for price from the damage model and applies it to impact, because it can't be done." Nov. 15, 2012 Hr'g Tr. 346. Thus, Dr. McClave's impact analysis fails to utilize either the transaction prices customers actually paid or any "but for" prices whatsoever.

The fundamental flaw in the class certification order is that, rather than requiring plaintiffs to establish that each customer's actual transaction prices exceeded the prices they would have paid "but for" the alleged conspiracy, the district court validated plaintiffs' focus on *list* prices by assuming that those prices raised the "starting point for price negotiations, ultimately inflating the prices paid" by *all* customers. Class Cert. Op. 44-45; *see also id.* at 46 n.30 ("'[I]f plaintiffs can establish list prices were higher, they can demonstrate impact' regardless of the price ultimately negotiated for.") (citing *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 221 (E.D. Pa. 2001), *aff'd*, 305 F.3d 145 (3d Cir. 2002)); *id.* at 46 n.31

8

("[A]t this juncture, [plaintiffs] need only show, and have shown, that they will be able to prove through common evidence that the *list* price increases caused antitrust injury to the [plaintiffs].") (emphasis added).    Although the court referenced the plaintiffs' expert analysis on antitrust impact in reaching this conclusion, that analysis (as explained above) ignored the vast majority of the trade spend discounts and is essentially a list-price analysis.    Thus, the district court concluded that plaintiffs could establish antitrust impact on a classwide basis *without proof of the actual transaction prices paid by individual customers.*

Such reliance on list prices alone falls short of the "rigorous analysis" mandated by Rule 23 and due process.    While a list-price conspiracy could "*in theory*" impact an entire class by raising transaction prices for all class members, *Hydrogen Peroxide*, 552 F.3d at 325 (emphasis added), that theory is not invariably true in fact.    At the class-certification stage, plaintiffs have the burden to affirmatively demonstrate that common evidence of rising list prices can prove impact across the entire class, *see id.*; they cannot simply rely on a *presumption* of impact.    Where defendants contend that there are "substantial price disparities among similarly situated customers" and it is "far from clear the violation resulted in harm to the entire class," the district court must address these contentions before deciding whether class certification is proper.    *See id.* at 326; *see also id.* at 320

9

("[A] district court errs as a matter of law when it fails to resolve a genuine legal or factual dispute relevant to determining the requirements [of Rule 23].").

Here, defendants offered proof that allegedly inflated *list* prices did not necessarily affect the *actual* prices each customer paid because changes in trade spend discounts did not correlate with changes in list prices. Nov. 16, 2011 Hr'g Tr. 70-73. Indeed, trade spend discounts increased for a large number of chocolate customers after each list price increase. *Id.* But while the district court acknowledged that there was evidence to support defendants' argument "that list prices and transactional prices are entirely unrelated," it postponed any resolution of that issue until trial. *See* Class Cert. Op. 46 n.31. Under *Hydrogen Peroxide*, however, class certification is unwarranted in the first place unless plaintiffs demonstrate that they can prove classwide injury with classwide proof. Where, as here, list price increases did not necessarily increase the actual prices paid by any given customer, the purported class will not be able to establish classwide injury with classwide proof. By failing to require any real analysis of the actual prices paid at the class-certification stage, the district court simply assumed away the key issue in dispute.

Another way of looking at the same issue is that the district court erred in assessing predominance under Rule 23, as it looked *solely* to the proofs plaintiffs will seek to introduce. But that is only half of the required analysis. The court

10

entirely ignored that the defendants, as part of their defense, are entitled to present individualized evidence against each class member. This approach is inconsistent with Rule 23. In assessing certification, "'a critical need is to determine how the case will be tried,'" *Hydrogen Peroxide*, 552 F.3d at 312 (quoting 2003 Advisory Committee note to Rule 23), and that determination implicates the defense to be presented every bit as much as the claims to be presented.

The district court acknowledged that defendants "are not precluded from offering evidence at trial to support their argument that list prices and transactional prices are entirely unrelated." Class Cert. Op. 46 n.31. And the court recognized that the trade spend programs differ substantially across manufacturers and individual purchasers. *See id.* at 4 & n.3. Here, the defense would involve an endless parade of plaintiffs, each examined on the particular discounts, rebates, allowances, etc. that they individually negotiated with each of the defendants to determine prices actually paid. Yet the district court gave the "defense" and the individualized proof it would entail no weight.

The Supreme Court emphasized the importance of this consideration in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). Considering nationwide employment discrimination claims, the Court observed that, even if class evidence demonstrated "a pay or promotion pattern that differs from the nationwide figures or the regional figures in *all* of Wal-Mart's 3,400 stores," certification would be

11

inappropriate because some defendant "managers will claim that the availability of women, or qualified women, or interested women, in their stores' area does not mirror the national or regional statistics." *Id.* at 2555.

That same principle has been embraced by this Court. In *Newton*, the Court denied certification where "actual injury" could not "be presumed" and defendants had "the right to raise individual defenses against each class member." 259 F.3d at 191-92. The Court determined that "establishing proof of the plaintiffs' injuries and litigating the defenses available to the defendants would present insurmountable manageability problems for the District Court." *Id.* at 192; *see also In re LifeUSA Holding Inc.*, 242 F.3d 136, 147 (3d Cir. 2001) ("[V]arying defenses," among other factors, renders "certification of individualized issues inappropriate.").

In holding that the need for individual proof of antitrust impact did not preclude class certification here, the district court relied on *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 656 (7th Cir. 2002). *See* Class Cert. Op. 45 n.29. That reliance is misplaced. In that case, the Seventh Circuit merely rejected the defendants' suggestion that list prices are *irrelevant* to the antitrust inquiry. *See* 295 F.3d at 656. As the court observed (in the context of a merits, not a class-certification, discussion), "sellers would not bother to fix list prices if they thought there would be no effect on transaction prices." *Id.* But saying that an

12

increase in list prices is *relevant* to the antitrust inquiry is a far cry from saying that an increase in list prices *invariably* leads to a higher negotiated price with every customer. Thus, *High Fructose Corn Syrup* in no way supports the district court's conclusion that an alleged list-price conspiracy can be assumed to increase the actual transaction prices *paid by each and every customer*. *See* Class Cert. Op. 44.

The other authorities on which the district court relied are equally inapposite. The cited portion of *McDonough v. Toys R' Us, Inc.* is an excerpt from the court's damages analysis, not its impact analysis. *See* Class Cert. Op. 46 (citing *McDonough v. Toys R' Us, Inc.*, 638 F. Supp. 2d 461, 490 (E.D. Pa. 2009)). The impact analysis in *McDonough* is premised on the court's conclusion that "when list prices have been artificially inflated, *fixed or proportional discounts* from them are equally inflated." *McDonough*, 638 F. Supp. 2d at 486 (emphasis added). Such a finding is not applicable where, as here, trade spend discounts vary greatly, and are not "fixed or proportional discounts." *See* Nov. 16, 2011 Hr'g Tr. 4-28. Similarly, the court in *In re Urethane Antitrust Litigation* found common evidence of antitrust impact based at least in part on evidence of "a correlation between customers' price increases at the time of list price increases." 237 F.R.D. 440, 451 (D. Kan. 2006). Where, as here, list price increases did *not* correlate with corresponding changes in each customer's actual prices, no such common evidence of antitrust impact can be found. *See* Nov. 16, 2011 Hr'g Tr. 70-73.

13

The existing case law on establishing antitrust injury at class certification in industries with pervasive and varied discounts from list prices is mixed. On the one hand, some courts have held that plaintiffs cannot meet their burden of showing common proof of impact where, as here, "the prices actually paid by some customers for the [products] at issue ha[d] no relationship with Defendants' price increases." *In re Plastics Additives Antitrust Litig.*, No. 03-CV-2038, 2010 WL 3431837, at *6 (E.D. Pa. Aug. 31, 2010). On the other hand, there is case law to the contrary from courts outside this Circuit. *See, e.g., In re EPDM Antitrust Litig.*, 256 F.R.D. 82, 88-95 (D. Conn. 2009). Granting interlocutory review would allow this Court to clarify this important question of law.

## II.    The District Court Erred By Holding That Class Certification Is Warranted Where, As Here, The Putative Class Concededly Includes Plaintiffs Who Have Not Been Injured And Thus Have No Claim.

In addition, the district court erred, and muddled the law, by certifying a class that includes, *by plaintiffs' own admission*, at least 68 uninjured customers. Class Cert. Op. 46 n.30; Nov. 16, 2011 Hr'g Tr. 114-15. As this Court stated in *Hydrogen Peroxide*, "*every* class member must prove at least some antitrust impact resulting from the alleged violation." 552 F.3d at 311 (emphasis added). That requirement follows logically from Rule 23, which presupposes that resolution of the named plaintiffs' claims will also resolve the absent class members' claims.

14

Among other things, Rule 23(a) requires that a class representative's claims be "typical" of the other class members' claims, and that the named plaintiff's circumstances not be "markedly different" than those of putative class members. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 598 (3d Cir. 2012). Similarly, Rule 23(b)(3) requires that common issues "predominate" in order for class certification to be justified. Fed. R. Civ. P. 23(b)(3). Both of these requirements help ensure that class certification is reserved for those situations where the plaintiffs are so similarly situated that the efficiencies to be gained from a collective approach far outweigh any minor differences. But where putative class members cannot show *any* injury, they have no claims at all, and by definition the named plaintiff's claims cannot be "typical." Nor can common issues be said to "predominate" unless all elements of a claim can be proven on a classwide basis with classwide proof. *See, e.g.*, *Hydrogen Peroxide*, 552 F.3d at 311.

The class certified in this case, however, has precisely the shortcomings that Rule 23 and *Hydrogen Peroxide* seek to avoid. By plaintiffs' own admission, there are at least 68 customers in the putative class that suffered *no injury whatsoever*. *See* Class Cert. Op. 46 n.30. Using Dr. McClave's own methodology, defendants' expert found over 700 uninjured purchasers—about a quarter of the putative class. Nov. 16, 2012 Hr'g Tr. 114-15. But the precise number is beside the point. The point here is that, contrary to *Hydrogen Peroxide*, the district court certified a class

15

even while acknowledging that plaintiffs *could not demonstrate* antitrust impact to "every class member." 552 F.3d at 311.

The court below, however, is not the first district court in this Circuit to make this mistake, even after *Hydrogen Peroxide*. Earlier this year, the district court for the Eastern District of Pennsylvania expressly rejected the proposition that the "every class member" language in *Hydrogen Peroxide* applies at the class certification stage. *See In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 226-27 (E.D. Pa. 2012). And the district court for the District of New Jersey reached the same conclusion in a 2011 case. *See In re Neurontin Antitrust Litig.*, No. 02-1390, 2011 WL 286118, at *8 n.23 (D.N.J. Jan. 25, 2011). A closer examination of *Hydrogen Peroxide* makes clear that these courts have misconstrued it.

First, the cases that *Hydrogen Peroxide* cites for the requirement that plaintiffs must be able to prove injury to "every class member" make clear that this requirement applies to class certification, not merely the merits stage of a case. *See Hydrogen Peroxide*, 552 F.3d at 311 (citing *Bogosian*, 561 F.2d at 454, and *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003)). In *Bogosian*, this Court noted that proof of impact can be made on a common basis "so long as the common proof adequately demonstrates some damage to *each individual*." *Bogosian*, 561 F.2d at 454 (emphasis added). Similarly, *Hydrogen Peroxide* quotes *Bell Atlantic* for the proposition that, "[w]here fact of damage cannot be

16

established for *every class member* through proof common to the class, the need to establish antitrust liability for individual class members *defeats Rule 23(b)(3) predominance.*" *Hydrogen Peroxide*, 552 F.3d at 311 (quoting *Bell Atlantic*, 339 F.3d at 302; emphasis added). The *Hydrogen Peroxide* court gave no indication that it intended to take an approach different than the cases it was citing.

Nor would a different approach have made sense in light of the broader context of the *Hydrogen Peroxide* decision. An interpretation of "every class member" as applying only to the merits stage and not class certification would run contrary to the central point of *Hydrogen Peroxide*, which is that the evaluation necessary to determine whether class certification is warranted may overlap with the merits of the case. Specifically, the court ruled that "the court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action." *Id.* at 307. Particularly when read in tandem with the cases upon which this Court relied in *Hydrogen Peroxide*, it is readily apparent that a plaintiff seeking class certification must show that antitrust impact to "every class member"—an element of the substantive antitrust claim—can be established on a classwide basis with classwide proof. By certifying a class that includes persons who concededly have not been injured and thus have no claim, the district court violated not only Rule 23, but the basic due process principles on which the Rule is based.

17

The district court tried to sidestep this problem of unimpacted class members on the ground that "[plaintiffs] state that [1] Dr. McClave's models will be further refined, and, [2] to the extent necessary, unaffected customers may be removed at the claims phase of the litigation." Class Cert. Op. 46 n.30. Neither of these points remotely supports certification.

As a threshold matter, a court cannot certify a class that does not *presently* comply with the requirements of Rule 23. Indeed, the 2003 amendments to Rule 23 abolished "conditional" certification precisely to underscore this point. *See, e.g.*, *Hydrogen Peroxide*, 552 F.3d at 319 ("'A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met.'") (quoting 2003 Advisory Committee note to Rule 23). It goes without saying that a court cannot certify a class based on a plaintiff's statement that its expert will at some future date "refine" an analysis that currently shows that the class includes persons who have not been injured. "A party's assurance to the court that it intends or plans to meet the requirements [of Rule 23] is insufficient." *Hydrogen Peroxide*, 552 F.3d at 318; *see also Gates v. Rohm & Haas Co.*, 655 F.3d 255, 270 (3d Cir. 2011) (same); *Newton*, 259 F.3d at 188 & n.33 (same).

Moreover, a court cannot certify a class that includes persons who have not been injured on the theory that such persons can be carved out of the class at the damages phase. As noted above, injury is an element of *liability*, not *damages*: a

18

plaintiff who has not been injured has no claim in the first place. *See, e.g.,*
*Hydrogen Peroxide*, 552 F.3d at 311-12. Indeed, this Court specifically rejected
the precise reasoning adopted by the district court over a decade ago, in *Newton*.
The plaintiffs there contended that class certification was warranted,
notwithstanding their inability to prove individual injury on a classwide basis,
because "their expert could calculate the *amount of damages* each class member
sustained thereby removing proof of injury as an obstacle to certification." 259
F.3d at 187 (emphasis added). This Court was "not convinced": "even if plaintiffs
could present a viable formula for calculating damages (which they have not),
defendants could still require *individualized proof of economic loss*." *Id.* at 188
(emphasis added). "Proof of injury (whether or not an injury occurred at all) must
be distinguished from calculation of damages (which determines the actual value
of the injury." *Id.*; *see also Hydrogen Peroxide*, 552 F.3d at 311 (same).

    The district court below relied on *In re OSB Antitrust Litigation* for the
proposition that "'challenges to individual claims based on class membership may
be resolved at the claims phase of the litigation.'" Class Cert. Op. 46 n.30 (quoting
No. 06-826, 2007 WL 2253418, at *9 (E.D. Pa. Aug. 3, 2007)). But *OSB* stands
only for the unremarkable proposition that "the proposed class need only be
ascertainable by some objective criteria, not actually ascertained" before class
certification. 2007 WL 2253418, at *9. It does not remotely stand for the

19

proposition that persons who concededly have no claim may be included in the class for the purpose of establishing liability, and simply carved out of the class at the damages phase.

As noted above, however, despite the unequivocal teaching of *Hydrogen Peroxide*, there is a division among the district courts in this Circuit, and indeed among the Circuits, on this issue. *See, e.g., Flonase*, 284 F.R.D. at 226-27; *Neurontin*, 2011 WL 286118, at *8 n.23. Both *Flonase* and *Neurontin* rely on the Seventh Circuit's opinion in *Kohen v. Pacific Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009), which holds that class certification may still be available even where, as here, it is conceded that the class includes persons who have not been injured. *See id.* The district court in *Flonase* incorrectly sought to limit this Court's contrary ruling in *Hydrogen Peroxide* to "the *merits* stage of the litigation," as opposed to the *class certification* stage. *See* 284 F.R.D. at 226 (emphasis in original). Putting aside the merits of this issue, there can be no dispute that this issue presents a recurring and important question of class-certification law on which this Court's guidance is warranted.

## CONCLUSION

For the foregoing reasons, this Court should grant this petition.

20

December 21, 2012                    Respectfully submitted,


Alan R. Boynton Jr.                    Thomas D. Yannucci, P.C.
MCNEES WALLACE & NURICK LLC            Christopher Landau, P.C.
100 Pine Street, PO Box 1166           Craig S. Primis, P.C.
Harrisburg, PA  17108                  Jennifer W. Cowen
(717) 232-8000                         Erin C. Johnston
                                       KIRKLAND & ELLIS LLP
                                       655 Fifteenth Street, N.W., Suite 1200
                                       Washington, DC  20005
                                       (202) 879-5000

*Counsel for The Hershey Company and Hershey Canada Inc.*

Stefan M. Meisner                      David Marx, Jr.
MCDERMOTT WILL & EMERY LLP             MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.         227 West Monroe Street
Washington, DC  20001                  Chicago, IL  60606
(202) 756-8000                         (312) 372-2000

*Counsel for Mars, Incorporated and Mars Snackfood US LLC*


Carmine R. Zarlenga                    Peter E. Moll
Adam L. Hudes                          CADWALADER, WICKERSHAM & TAFT LLP
MAYER BROWN LLP                        700 Sixth Street, N.W.
1999 K Street, N.W.                    Washington, DC  20001
Washington, D.C.  20006                (202) 826-2200
(202) 263-3000

*Counsel for Nestle USA, Inc.*

## CERTIFICATE OF BAR MEMBERSHIP

Pursuant to 3rd Circuit Rule 28.3(d) and 46.1, I hereby certify that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

_____
Christopher Landau, P.C.
*Counsel for The Hershey Company &*
*Hershey Canada Inc.*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that, on this date, he caused to be served, via Federal Express and e-mail, the foregoing Petition Pursuant to Fed. R. Civ. P. 23(f) and accompanying appendix upon the following counsel:

H. Laddie Montague, Jr., Esq.
Ruthanne Gordon, Esq.
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA   19103
(215) 875-3000
hlmontague@bm.net
rgordon@bm.net

Michael D. Hausfeld, Esq.
Robert G. Eisler, Esq.
Hilary K. Scherrer, Esq.
HAUSFELD LLP
1700 K Street, NW., Suite 650
Washington, DC   20006
(202) 540-7200
mhausfeld@hausfeldllp.com
reisler@hausfeldllp.com
hscherrer@hausfeldllp.com

*Lead Counsel for Direct Purchaser Plaintiffs*

Roman M. Silberfeld, Esq.
Bernice Conn, Esq.
ROBINS KAPLAN MILLER
& CIRESI LLP
2049 Century Park East, Suite 3400
Los Angeles, CA   90067
(310) 552-0130
rmsilberfeld@rkmc.com
bconn@rkmc.com

Steven R. Maher, Esq.
THE MAHER LAW FIRM
631 West Morse Boulevard
Suite 200
Winter Park, FL   32789
(407) 839-0866
smaher@maherlawfirm.com

Joseph U. Metz, Esq.
DILWORTH PAXSON LLP
112 Market Street, Suite 800
Harrisburg, PA   17101
(717) 236-4812
jmetz@dilworthlaw.com

*Lead Counsel for the Indirect Purchasers for Resale Plaintiffs*

Steven F. Benz , Esq.
KELLOGG HUBER HANSEN
TODD EVANS & FIGEL, PLLC
Sumner Square
1615 M Street, NW, Suite 400
Washington, DC   20036
(202) 326-7929
sbenz@khhte.com

Christopher Lovell, Esq.
LOVELL STEWART HALEBIAN LLP
61 Broadway, Suite 501
New York, NY   10006
(212) 608-1900
clovell@lshllp.com

*Lead Counsel for the Indirect End User Plaintiffs*

Steve D. Shadowen, Esq.
HILLIARD & SHADOWEN, LLC
39 West Main Street
Mechanicsburg, PA   17055
(855) 344-3298
steve@hilliardshadowenlaw.com

Joseph T. Lukens, Esq.
FARUQI & FARUQI LLP
101 Greenwood Avenue, Suite 600
Jenkintown, PA   19046
(215) 277-5770
jlukens@faruqilaw.com

*Liaison Counsel for the Individual Plaintiffs*

Patrick J. Stueve, Esq.
Rachel E. Schwartz, Esq.
Steve N. Six, Esq.
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO   64112
(816) 714-7110
stueve@stuevesiegel.com
schwartz@stuevesiegel.com
six@stuevesiegel.com

Jason S. Hartley, Esq.
STUEVE SIEGEL HANSON LLP
550 West C Street, Suite 610
San Diego, CA   92101
(619) 400-5822
hartley@stuevesiegel.com

*Counsel for Associated Wholesale Grocers, Inc.*

Christopher Landau, P.C.

December 21, 2012